```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                    SOUTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION

EDWARD THOMPSON,                    :

       Plaintiff,                   :

vs.                                 :    CIVIL ACTION 04-0327-WS-M

BILL RICHARDSON, et al.,            :

       Defendants.                  :
```

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motion for summary judgment of Defendants, Sheriff Tracy Hawsey, Jail Administrator Shirley Trent, and Chief of Operations William Richardson (Docs. 35, 36), and Plaintiff's Opposition to that motion (Doc. 42).  For the reasons stated below, it is recommended that the motion for summary judgment of Defendants Hawsey, Trent, and Richardson be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

## I.  SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.  At the time of the incident made

the basis of this litigation, Plaintiff was an inmate
incarcerated at the Conecuh County Detention Facility ("Conecuh
County Jail"), in Evergreen, Alabama. (Doc. 25 at 4).  On
February 12, 2004, Plaintiff was arrested on a warrant which
stated that there was probable cause to believe that he had, as
an adult criminal sex offender,[1] established a residence within
2000 feet of the property on which a school or child care
facility is located, in violation of Alabama Code § 15-20-26(A).
(Doc. 36, Ex. A at 2).  Plaintiff was booked into the Conecuh
County Jail that day.  (Id., Ex. B at 2).

Plaintiff claims that, on February 13, 2004, while
incarcerated at the Conecuh County Jail, he asked to see a doctor
for his high blood pressure but was not treated by a physician
until February 18, 2004.  (Doc. 25 at 4-5).  Plaintiff claims
that, in the interim, he suffered a stroke, causing him "pain and
suffering."  (Id.).  Plaintiff remained in the Conecuh County
jail until April 28, 2004, when he was released into the custody
of the Escambia County, Florida, Sheriff's Department, which had
a warrant for Plaintiff's arrest because of his failure to
register as a convicted sex offender.[2]  (Doc. 36, Ex. E at 1-9).

_____

[1] The warrant stated that Plaintiff had been convicted of
lewd and lascivious behavior with a child under the age of 16.
(Doc. 36, Ex. A at 2).

[2] Plaintiff is no longer incarcerated and is living in
Evergreen, Alabama.  (Doc. 42).

2

## II.  PROCEDURAL ASPECTS OF THE CASE

On May 19, 2004, the present action was transferred to this Court from the United States District Court for the Middle District of Alabama.  (Doc. 6).  On May 18, 2005, Plaintiff filed his current § 1983 Complaint in this Court,[3] seeking compensatory damages for "pain and suffering" caused by Defendants' delayed medical treatment of his high blood pressure.  (Doc. 25 at 4-5). Plaintiff also requests that Defendants' employment be terminated.  (Id.).

On November 18, 2005, Defendants filed their Special Report and Answer, denying any violation of Plaintiff's constitutional rights and asserting various defenses, including qualified and absolute immunity.  (Docs. 35, 36).  The Court converted Defendants' Special Report and Answer to a motion for summary judgment on November 6, 2006.  (Doc. 41).   On November 22, 2006, Plaintiff filed a response to the Special Report, reasserting his delay of medical care claim against Defendants.  (Doc. 42). These motions are now before the Court.

## III. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules

---

[3] On December 22, 2004, the Court consolidated Civil Action No. 04-355-CG-L with the current action.  (Doc. 16).

of Civil Procedure grant this Court authority under Rule 56 to
render "judgment as a matter of law" to a party who moves for
summary judgment.  "[S]ummary judgment is proper 'if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact. . . .'"
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.
R. Civ. P. 56(c)).

     The Court must view the evidence produced by "the nonmoving
party, and all factual inferences arising from it, in the light
most favorable to" that party.  Barfield v. Brierton, 883 F.2d
923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

>           an adverse party [to a motion for summary
>      judgment] may not rest upon the mere
>      allegations or denials of the adverse party's
>      pleading, but the adverse party's response,
>      by affidavits or as otherwise provided in
>      this rule, must set forth specific facts
>      showing that there is a genuine issue for
>      trial.  If the adverse party does not so
>      respond, summary judgment, if appropriate,
>      shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at
325-27.  "[T]here is no issue for trial unless there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party. . . .  If the evidence is merely
colorable, . . . or is not significantly probative, . . . summary
judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary

judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Liberty Mut. Fire Ins. Co. v. Sahawneh, 2001 WL 530424, *1 (S.D. Ala. May 11, 2001) (unreported) (citing Anderson, 477 U.S. at 249-50).

## IV. DISCUSSION

In this action, Plaintiff seeks redress for an alleged constitutional deprivation pursuant to 42 U.S.C. § 1983. The Court construes Plaintiff's Complaint against Defendants as asserting a violation of his rights under the Eighth Amendment inasmuch as Defendants allegedly delayed medical treatment of Plaintiff's high blood pressure while he was incarcerated at the Conecuh County jail.[4]  For the reasons set forth below, the Court

---

[4] Plaintiff does not specify whether he is suing Defendants, Sheriff Hawsey, Jail Administrator Trent, and Chief of Operations Richardson, in their official or individual capacities or both. Thus, the Court will consider both.  Each of these Defendants is a state official; thus, each Defendant is absolutely immune from suit for damages in his or her official capacity.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated

finds that Plaintiff's allegations fail to establish any constitutional violation by Defendants.

Denial of Adequate Medical Care

In this action, Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by delaying proper medical treatment for him during his incarceration at the Conecuh County Jail. Specifically, Plaintiff alleges that he asked to see a doctor on February 13, 2004, but was not allowed to do so until February 18, 2004. According to Plaintiff, he suffered a stroke in the interim. (Doc. 25 at 4-5).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as

---

a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001). Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (internal quotation marks and citation omitted).

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." Hill, 40 F.3d at 1187 (internal citations

7

and quotation marks omitted).  "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem."  Id.

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment.  Gaudreault, 923 F.2d at 208; Monmouth County, 834 F.2d at 347.  Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious."  Id.  An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.  Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay."  Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added).  Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Hill, 40 F.3d at 1188-89 (emphasis in original) (footnotes omitted).

In this action, Plaintiff claims that he suffered a stroke during the five-day delay in treatment of his high blood pressure; however, there is no medical evidence to support that claim.  When examined on February 18, 2004, Dr. Gerald Roberts,

the prison physician who treated Plaintiff throughout his incarceration at the Conecuh County jail, could find no evidence that Plaintiff had suffered a stroke. (Doc. 36, Ex. L at 18). Dr. Roberts indicated in his notes that, while Plaintiff "thinks" he has had a stroke, he "walks fine," "talks fine," "doesn't seem to be in any distress," "hasn't had any trouble swallowing or seeing," "has had no trouble with his respiratory system," "has no trouble with his digestive system," "could stand with his feet together and arms to the side with his eyes closed without any problem," "could walk on his toes and heels," and his finger to hand exam was normal. (Doc. 36, Ex. L at 18). At a follow up examination on April 8, 2004, Dr. Roberts indicated that he was puzzled by Plaintiff's claim that he had suffered a stroke,[5] noting only that Plaintiff's left hand was weaker than his right, which he concluded might be simply the result of Plaintiff being right-handed. (Id. at 9). Because Plaintiff has failed to offer any verifying medical evidence to show that the five-day delay in treatment of his high blood pressure from February 13, 2004, to February 18, 2004, "pos[ed] a substantial risk of serious harm" to him, Farrow, 320 F.3d at 1243, or in any way had a detrimental effect on his medical condition, Hill, 40 F.3d at 1188, Plaintiff has failed to establish the objective element of his Eighth

---

[5] Dr. Roberts stated: "Even though I can't find anything definitely wrong with him, he seems to think he had a stroke." (Doc. 36, Ex. L at 9).

9

Amendment claim.

Further, in order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. <u>Farrow</u>, 320 F.3d at 1243.

>    In <u>Estelle</u>, the Supreme Court established
>    that "deliberate indifference" entails more
>    than mere negligence. <u>Estelle</u>, 429 U.S. at
>    106, 97 S. Ct. 285; <u>Farmer</u>, 511 U.S. at 835,
>    114 S. Ct. 1970.  The Supreme Court clarified
>    the "deliberate indifference" standard in
>    <u>Farmer</u> by holding that a prison official
>    cannot be found deliberately indifferent
>    under the Eighth Amendment "unless the
>    official *knows of* and *disregards an excessive*
>    *risk to inmate health or safety*; the official
>    must both be aware of facts from which the
>    inference could be drawn that a substantial
>    risk of serious harm exists, and he must also
>    draw the inference."  <u>Farmer</u>, 511 U.S. at
>    837, 114 S. Ct. 1970 (emphasis added).  In
>    interpreting <u>Farmer</u> and <u>Estelle</u>, this Court
>    explained in <u>McElligott</u> that "deliberate
>    indifference has three components: (1)
>    subjective knowledge of a risk of serious
>    harm; (2) disregard of that risk; (3) by
>    conduct that is more than mere negligence."
>    <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221
>    F.3d at 1258 (stating that defendant must
>    have subjective awareness of an "objectively
>    serious need" and that his response must
>    constitute "an objectively insufficient
>    response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46.  In this action, Plaintiff must show that Defendants engaged in "deliberately indifferent" delay in treating his serious medical problems.  <u>Cf. McElligott v. Foley</u>, 182 F.3d 1248, 1256-57 (11th Cir. 1999) (reversing summary

judgment for a prison physician and nurse who knowingly and deliberately delayed medical treatment to an inmate who was suffering from severe abdominal pain, extreme vomiting, and significant weight loss).

A review of the record in this case shows that, upon being booked into the Conecuh County Jail on February 12, 2004, Plaintiff was given a health screening and assessment. (Doc. 36, Ex. K). At that time, Plaintiff indicated that he had high blood pressure; however, he stated that he was taking no medications for that condition. (Id.).

According to Plaintiff, the following day, on February 13, 2004, he asked to see the doctor. Voncille Davis, a corrections officer at the jail, testified that, when Plaintiff asked her to put him "on sick call," she gave him a form and put his name on the list to see Dr. Roberts. (Doc. 36, Ex. J at 3). The precise date that Davis placed Plaintiff on the sick call list is unclear from the record; however, it is undisputed that it was some time between February 13, 2004, and February 18, 2004.[6] (Doc. 25 at

---

[6] In his affidavit, Defendant Sheriff Hawsey testified that it is the policy of the Conecuh County Jail that all inmates receive all necessary medical care. (Doc. 36, Ex. G at 3). To that end, the Conecuh County Jail has an inmate sick call policy whereby any inmate who desires to go on sick call need only request a form, complete the form, and return it to any member of the jail staff. (Id.). The forms are then given to the jail physician, Dr. Roberts, who reviews them and notifies the jail staff if he needs to see an inmate. (Id.). Jail staff are required to follow all medical instructions and to fill and

11

4-5).  Davis testified that, at no time did she observe Plaintiff in medical distress or exhibiting any signs or symptoms of a stroke.  (Doc. 36, Ex. J at 3).

Plaintiff's medical records show that he was in fact examined by Dr. Roberts on February 18, 2004.  (Doc. 36, Ex. L at 18).  At that time, Plaintiff requested medication for high blood pressure, and Dr. Roberts consented, noting that Plaintiff's blood pressure was 150/90.  (Id. at 18-19).  Plaintiff informed Dr. Roberts that he had never been on medication for this condition, nor had he ever seen a doctor for it.  (Id. at 18).  Dr. Roberts' notes indicate that Plaintiff also thought that he had suffered a stroke, but Dr. Roberts could find no sign of a stroke.  (Id.).  Dr. Roberts continued to closely monitor Plaintiff throughout his incarceration at the Conecuh County Jail, treating Plaintiff for high blood pressure, headaches, ear aches, and gingivitis.  (Id. at 11-19).

In order to satisfy the subjective element of an Eighth Amendment claim, Plaintiff must show that Defendants knew of and disregarded "an excessive risk to [his] health or safety."  Farrow, 320 F.3d at 1245.  Stated differently, Plaintiff must show that Defendants had "subjective knowledge of a risk of

---

dispense all prescriptions issued by the prison physician in accordance with the instructions on the prescription.  (Id.).  In the event of an emergency, jailers have the independent authority to call the doctor and/or to summon an ambulance to the jail to transport an inmate to the hospital.  (Id.).

serious harm," that Defendants disregarded that risk, and that
Defendants did so "by conduct that is more than mere negligence."
Id.  The record is devoid of such evidence.  There is no evidence
that, during the five-day period of time between February 13,
2004, and February 18, 2004, Plaintiff exhibited symptoms that
would have indicated to Defendants that he was having, or in
danger of having, a stroke or any other serious medical problem.
After conducting his examination on February 18, 2004, Dr.
Roberts could find no evidence that Plaintiff had suffered a
stroke or any other serious medical problem.  On the other hand,
Plaintiff's medical records show that Dr. Roberts followed him
closely throughout his incarceration in the Conecuh County Jail
and conscientiously treated his high blood pressure, as well as
other various ailments presented.[7]

   The Eleventh Circuit has recognized that "when a prison
inmate has received medical care, courts hesitate to find an
Eighth Amendment violation."  Waldrop v. Evans, 871 F.2d 1030,
1035 (11th Cir. 1989).  In this action, there is no evidence that
the alleged five-day delay in treatment for Plaintiff's high

---

   [7] Plaintiff alleges that the five-day delay in treatment for
his high blood pressure was racially motivated, stating that a
white inmate and a female inmate received prompt attention for
their medical complaints.  (Doc. 25 at 4-5).  However, there is
no evidence in the record related to the medical conditions of
these two inmates that may or may not have prompted a more
expeditious course of medical treatment for them; thus,
Plaintiff's allegations of racial bias are unavailing.

blood pressure posed a substantial risk of serious harm to him or that Defendants Hawsey, Trent, and/or Richardson were deliberately indifferent to Plaintiff's serious medical needs. Because Plaintiff has failed to meet the objective and subjective requirements of his Eighth Amendment claim, Defendants are entitled to summary judgment.[8]

## V.   CONCLUSION

Based on the foregoing, it is recommended that the motion for summary judgment of Defendants, Sheriff Tracy Hawsey, Jail Administrator Shirley Trent, and Chief of Operations William Richardson (Docs. 35, 36), be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

---

[8] In addition to the foregoing, Defendants are entitled to summary judgment on the basis of Plaintiff's failure to establish a causal connection between any of the Defendants and the alleged constitutional deprivation.  In order to state a claim upon which relief can be granted in a § 1983 action, a plaintiff must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights.  <u>Boglin v. Weaver</u>, 2001 WL 228172, *14 (S.D. Ala. 2001) (unpublished). There is no evidence that any of these Defendants was personally involved in the alleged delay in providing Plaintiff medical treatment, nor is there any evidence that, as supervisors, any of the Defendants failed to establish procedures for the protection of Plaintiff's constitutional rights or failed to take action against violations of which they had notice.  <u>See</u> <u>Goodson v. City of Atlanta</u>, 763 F.2d 1381, 1389 (11th Cir. 1985).  Thus, Defendants are entitled to summary judgment for this reason, as well.

14

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   <u>Objection</u>.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that

transcription is necessary is required before the United States will pay the cost of the transcript.

        DONE this 1st day of March, 2007.

                                s/BERT W. MILLING, JR.
                                UNITED STATES MAGISTRATE JUDGE